IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SOPHIA HERNANDEZ, | ) | |
| Plaintiff, | ) | Case No.  21-cv-2232 |
| | ) | |
| vs. | ) | |
| | ) | COMPLAINT |
| GARDEN CITY COMMUNITY | ) | FOR DAMAGES AND |
| COLLEGE, RYAN RUDA, | ) | DECLARATORY RELIEF UNDER |
| MERILYN DOUGLASS, | ) | TITLE IX, 42 U.S.C. §§ 1983 AND 1985 |
| BLAKE WASINGER, TERI WORF, | ) | DEMAND FOR JURY TRIAL |
| STEVE MARTINEZ, and JEFF CRIST | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Sophia Hernandez ("Hernandez"), by her counsel, and for her causes of action against Defendants states and alleges:

### Preliminary Statement

1.      This is a Title IX retaliation and civil rights action seeking declaratory relief and damages against employees and officials of Garden City Community College for depriving Plaintiff Hernandez of established constitutional and statutory rights.

2.      Plaintiff seeks full redress as provided by law against identified Defendants, state actors, under 28 U.S.C. §§ 2201 and 2202 for declaratory and other relief; under Title IX for damages and other relief for the retaliation she suffered based on her advocacy for herself, her daughter and other Title IX supporters at GCCC during relevant time periods objecting to sex discrimination/Title IX violations by college state actors; for the Title IX retaliation she suffered based on her protected activities in support of other students, patrons and others similarly situated for which she lodged objections and was damaged thereby; for violations, damages and other proper relief under 42 USC §§ 1983 and 1985 for the civil rights violations and civil rights conspiracy violations depriving Plaintiff of rights, privileges and immunities secured to her by

the First and Fourteenth Amendments to the United States Constitution; and for deprivation of rights secured under the laws and Constitutions of the United States and Kansas associated with her gender, her status as a parent of a female student of Garden City Community College subjected to sex discrimination to which Plaintiff objected, her free speech, petition and associational rights, and her own rights under Title IX to participate in the college's public offerings, benefits, and programs, which Defendants denied, hampered, or interfered with.

## Jurisdiction and Venue

3.       This Court has jurisdiction over this action by virtue of its authority to hear federal questions pursuant to 28 U.S.C. §§ 1331 and 1343 as to Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 and pursuant to the First and Fourteenth Amendments to the United States Constitution and under Title IX.

4.       The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to claims occurred in the District of Kansas.

## Parties

6.       Plaintiff Sophia Hernandez is a citizen of the United States and resident of Garden City, Finney County, Kansas.  At certain relevant times hereto, Plaintiff was an employee of Defendant Garden City Community College, the college's dance coach from 2014 until July 2019, a parent of two women students who attended GCCC, and is now a former employee of GCCC.  She was a consumer of the benefits GCCC offered because of its federal funding.  She supported and encouraged her daughters' decisions to attend GCCC and for one daughter to participate in its cheer/dance programs.  As well-known to Defendant Ruda, among other college

leadership including Defendant trustees, Plaintiff openly supported the college community by advocating for better treatment of women students, she actively supported Defendant Ruda, among other administrators with similar attitudes, as he was also an advocate for Title IX earlier in his GCCC career.  She therefore partook of GCCC's offerings and benefits in addition to the obviously direct benefits she personally received as an employee.

7.     Defendant Garden City Community College ("GCCC") is a public community college located in Garden City, Finney County, Kansas, established and existing under the laws of Kansas.  It is overseen by a publicly elected board of six trustees who are statutorily charged with the responsibility to operate the college.  To the extent it is relevant to a particular claim, Plaintiff asserts that she was harmed by the institutional Defendant GCCC, which is subject to liability under §§ 1983 and 1985 civil rights claims by virtue of the *Monell* Doctrine and under Title IX for discrimination and retaliation under that statute due to the unconstitutional official policies and/or customs of Defendant GCCC, through edicts or acts of its leadership, including among others by Defendants Wasinger, Douglass and Ruda, its final decision makers, due to the entity's ratification of unconstitutional acts, due to inadequate training, due to failed supervision and/or due to adoption of unlawful policies, formal and informal, that amounted to a widespread practice, used against her.

8.     Defendant GCCC is a "person" within the meanings of 42 U.S.C. §§ 1983 and 1985, pursuant to state law, and under this district's precedent given the college is a governmental entity or subdivision akin to a municipality and Defendant GCCC is not entitled to sovereign immunity under any claims alleged.

9.     Defendant GCCC and its trustees are subject to the Kansas Open Meetings Act and among other events or activities on campus the board of trustees' meetings as conducted

3

during all relevant time periods are alleged to be a public forum or designated public forum for purposes of her civil rights and Title IX claims asserted herein.  Plaintiff seeks a declaration that their meetings and other campus sanctioned events at issue herein be declared public forums for purposes of First and Fourteenth Amendment free speech, assembly, petition, and association rights.

10.     The individually named Defendants, among other as yet unnamed college state actors, acted on behalf of the institutional Defendant GCCC and committed unconstitutional acts against Plaintiff and/or Defendant GCCC through its final decision-making leadership's formally or informally adopted policies or customs ratified the wrongful and unconstitutional retaliatory behaviors of college employees or trustees, as well as perhaps others not yet identified.

11.     Defendant Ryan Ruda is believed to be a resident of Holcomb, Finney County, Kansas.  At all relevant time periods herein, he was an employee of GCCC, acting under color of state law, and at certain relevant time periods he was the Acting President and then the current President of GCCC, acting within the course and scope of his employment as such.  He is sued in his individual capacity, while also alleged to be a final decision-maker for his employer for claims asserted herein.  At certain relevant time periods herein as Acting President and then current President, Defendant Ruda, whether by statutory or delegated means, exercised, seized and/or held final decision-making authority over all GCCC policies as well as responsibility for ensuring GCCC complies with all legal requirements under the holdings and progeny recognized as the *Monell* Doctrine giving rise to the college's liability.

12.     Defendants Blake Wasinger, Merilyn Douglass, Teri Worf, Steve Martinez, and Jeff Crist are each believed to be residents of Garden City, Finney County, Kansas and at all relevant time periods each one was a trustee of Garden City Community College.  At all relevant

times, each trustee Defendant was acting under color of state law as an elected official of the college.  Pursuant to state law trustees are empowered to set policy of the college as well as to delegate certain authorities to college administrators including Defendant Ruda and at relevant time periods they, along with a majority of trustees, delegated final decision-making authority to Defendant Ruda.  Each trustee Defendant is sued in his/her individual capacity.

### Facts

13.    Plaintiff possessed a right under Title IX to be able to have access to educational programs and facilities without experiencing gender discrimination, harassment or retaliation for Defendants' unlawful acts under Title IX, separate and distinct from her rights as an employee to be free of employment related discrimination and retaliation, especially given the fact she took advocacy actions as a parent of a GCCC student and she is a former employee at the time certain relevant acts complained of herein took place.  Plaintiff anticipates the need to amend this Complaint upon receipt of a right to sue letter from EEOC associated with distinctly different claims encompassed by EEOC governed statutes.

14.    Plaintiff possesses the right to raise complaints of gender discrimination, to be known as a putative witness for other advocates of women's rights at GCCC, and to not be retaliated against by Defendants for having exercised these rights, because retaliation for having raised complaints of gender discrimination is itself a form and act of discrimination.

15.    Plaintiff possessed the right under the Constitution, its First and Fourteenth Amendments, and federal civil rights laws to be free from retaliation by state actors, these Defendants.

16.     Plaintiff possessed the right to Free Speech, Association and Petition under the First and Fourteenth Amendments and the right to be free from retaliation for having exercised her rights on the GCCC campus to the displeasure of Defendants.

17.     Plaintiff possessed the right to Equal Protection under the Fourteenth Amendment.  Plaintiff is entitled to equal treatment under the law to GCCC's benefits and offerings, uncorrupted by personal animus, which caused her harm by these Defendants taking unlawful actions against her.

18.     Plaintiff possessed rights under 42 U.S.C. §§ 1983 and 1985 that were violated by the individual GCCC Defendants based on a conspiratorial agreement reached by Defendants intending to harm her Title IX, Equal Protection, First and Fourteenth Amendments civil rights for Defendants' own improper, personal purposes or aims and not blindly executing College policy.

19.     The individual GCCC Defendants each are motivated by personal animus and/or discriminatory attitudes toward Plaintiff, which has never diminished with the passage of time.

20.     On April 8, 2020, Plaintiff filed charges of sex discrimination and retaliation against GCCC with EEOC and KHRC.

21.     Defendants knew or should have known Plaintiff had instituted an EEOC complaint against GCCC in April 2020, had filed a Notice of Claim in August 2018 alleging Title IX violations among other matters, and was a witness to acts involved in ongoing federal litigation in this district court, when in June 2020 Defendants Wasinger and Douglass, joined by Defendant Ruda, formed an agreement to carry out a civil rights conspiracy against her, among others, under §§ 1985 and 1983.

22.     On two occasions in June 2020, June 9 (incorrectly identified as June 8 on the GCCC trustees web page) and June 25, at Board of Trustees meetings Defendants Wasinger and Douglass in exchanges that appear preplanned or with prepared notes engaged in what Plaintiff alleges is a conspiracy to deter her (and others) by intimidation and threat as a witness and putative Plaintiff in federal court from attending or testifying freely, fully and truthfully herein and in other parties' then pending federal litigation.  They conspired to violate 42 U.S.C. § 1985(2)'s first clause.

23.     They accomplished their threats and intimidation by deriding as bad people, essentially pariahs in the Garden City community, anyone who brought civil rights claims against the College in the course of the last two years associated with the issues relevant herein. They inferred that anyone who brings civil rights claims or testifies in support of such claims were damaging the College, the students and destroying faculty and staff jobs because those were the consequences of the extremely large insurance rate hikes wrought upon the College due directly to the civil rights claims.

24.     These statements are also retaliatory under Title IX and under 42 U.S.C. § 1983.

25.     The June 2020 statements castigating civil rights Plaintiffs for bringing claims that have allegedly damaged the College and foisted on the College severe cutbacks affecting student services and thereby intimidating Plaintiff and other witnesses from associating with or testifying for Plaintiff were made by these Defendants knowing they would be interpreted in this fashion.

26.     These conspiratorial statements have been repeated in June 2020 and perhaps thereafter by the college president, Defendant Ruda, to media outlets including KSN-TV, among others, which Plaintiff asserts is, relevant to her Complaint, in retaliation for Plaintiff having

brought forth in her EEOC charges specific acts Ruda hoped would forever remain secret, especially from the college's trustees.

27.    In her EEOC charges Plaintiff detailed facts regarding Ruda's activities before he became president.  She alleges that because he was not transparent with trustees after he became president, as he told Plaintiff he would be, when Ruda failed to become the promised agent for effective change regarding Title IX issues on the campus, Plaintiff and others still attempted to support his new role.  That is until he revealed that he had been told by at least one trustee [which Plaintiff presumes by deduction to be Trustee Wasinger but to be determined through discovery] and/or perhaps other trustees, that they would not engage with faculty and staff in a respectful way unless or until essentially all Swender critics were gone from the college and all claims dismissed favorably to the college, not the claimants.  By deduction and logic, Plaintiff presumes she was included in this category.

28.    As Plaintiff stated in her charges:

…[W]e have evidence, witnesses, that Trustees in or about February 2019 allegedly told President Ruda to do what is alleged in the paragraphs above—he was to communicate threats to those individuals who came forward that nothing will get better between the Trustees and the faculty unless or until all claims are dismissed.  The gist is to hold the entire faculty and presumably staff hostage to put pressure on those who spoke up in order to force them to withdraw their claims.  The reward for doing that would be a better relationship with the Trustees and ostensibly better pay.  This tactic and these behaviors are clearly retaliatory under the law.

29.    As Plaintiff stated in her charges:

Instead of moving forward I believe I and perhaps others became the focus of the blame game, not the bad actors who took advantage of the Trustees.  I became the threat. Categorizing as "threats" a class of individuals who objected to sex discrimination and sexual harassment and expect GCCC to make reparations for the past in order to pave the way to the future is itself a form of sex discrimination and an Equal Protection violation.  Because retaliation against claimants for having raised allegations of sex discrimination is illegal, it follows logically that referring to or classifying employees who raised such allegations as "threats" is a discriminatory act under the law.  That overt act of classifying or pigeonholing someone as a threat and orally drawing that conclusion is a discriminatory act under the law when the next step is to seek to terminate them, treat them differently, deny them Equal Protection under the law, retaliate against them.

30.     As Plaintiff went on to state in her charges:

But even after I was told my services as Dance Coach were no longer required, as of June 29, 2019, which occurred in an odd meeting involving the cheer coach, not privately one on one, on May 20, 2019 and conducted by President Ruda, himself, it was extremely difficult for me to believe I would not be re-hired for this reason:

The two senior administrators I looked up to, I believed in, and I had been assured by them personally and professionally that they would never even think to retaliate against me for speaking up for a number of reasons, for instance, because they abhorred sex discrimination themselves, because they had refused to condone it by Swender and his Old Administration (which they were a part of), and most tellingly of all because they, Ryan Ruda and Colin Lamb, had been the ones in 2017-18 to personally and repeatedly encourage me to come forward with my first-hand knowledge and go to Trustee Steve Martinez!  They had been the ones to instigate and prod me repeatedly to speak up when I hesitated to do so for <u>fear of reprisal</u>.  And now they were the ones to carry out the New Administration's reprisal.  And their conduct in July 2019 was as unlawful retaliation as the conduct of former President Swender and former Athletic Director John Green dating back years earlier.  Nothing has changed.  They followed in Swender's footsteps.  They learned at the knee of the man they distained and then they used what they learned to employ that man's illicit tactics to carry out illegal retaliation against me.

31.     As Plaintiff further detailed in her charges, recognizing some individuals are not

clearly identified but their participation is important to merely include herein for now for clarity:

To be the target of Ryan Ruda and Colin Lamb's scheme to eliminate my position and usher in the Head Football Coach's wife to a new, artificially-crafted position was a slap in the face by previously trustworthy and formerly stand up men, one of whom was universally admired by his College peers for his stand against predatory and sexually provocative, inappropriate behavior involving the former President, former AD and two women cheer students.

Colin Lamb was known for standing his ground, toe to toe, in refusing to allow President Swender to invite two cheerleaders onto the College President's private plane to accompany the President and the former AD, among a few others, back from the national championship football game held in Arizona in 2016—because Lamb disapproved of the unsavory appearances of this kind of behavior by College leadership, it was wrong and he knew it could sully the College's reputation.

Several years later, it was shocking to me, that both men chose to bow to certain Trustees' admittedly inappropriate marching orders and retaliate against a category of employees, identifying them and me as threats.  I was a persona non grata employee because I stood up for women's rights at GCCC.  I am a woman who stood up for her daughter, for other cheer women and women's rights on campus, in general, and who spoke truth to power at <u>their</u> urgings, yes their urgings, which had helped in some small measure to usher the way for these two men of perceived good character to rise in stature, largely because I believed they cared about making systemic changes for the better for the treatment of women and given that I had witnessed their past, positive

9

behaviors trying to lead by example.  Sadly, in this short amount of time—from May 2018 to May 2019—they now allowed themselves to be co-opted, rather than empowered by their positions of leadership, by elected officials, certain Trustees, if you can believe what Ryan Ruda said to faculty in early 2019 was the case.  He was told to clean house by any means necessary.

32.     Lacking the intestinal fortitude in 2017-19 to be a personal agent for change, in the open, Defendant Ruda encouraged Plaintiff and various others to publicly carry the water for him so he could secure his position as president, while remaining in the background until after he was officially named college President.  Then on May 20, 2019, he determined Plaintiff was now a personal liability to him and in an act of Title IX retaliation, First/Fourteenth Amendment retaliation, along with being an act of EEOC retaliation, he announced she was being terminated.

33.     GCCC and Ruda lacked any just cause to do so.

34.     Regarding the EEOC charges, Defendant Wasinger admitted during the public comment section of the June 9, 2020, board of trustees meeting, claiming to speak for himself and giving a separate assurance that all presently-serving board members were either apprised of the contents and nature of the EEOC charges well before this meeting or all had prior access by some means well before this meeting, inferring they had been provided copies of it. Corroboration exists for these assertions.

35.     Plaintiff alleges the Defendants' receipt and review in April 2020 of her EEOC charges in conjunction with the receipt and review in the spring of 2020 of other related Plaintiffs' federal suits in this district, combined with Plaintiff's detailed factual assertions against Defendant Ruda, is a triggering event she alleges reignited Defendants Ruda, Wasinger and Douglass's personal animus.

36.     With that in mind, Plaintiff alleges Defendants Wasinger, Douglass and Ruda, and perhaps others, had already begun by at least June 8, 2020, one day before the meeting, to engage in a conspiracy when the college reportedly received word a "few days" before June 9,

that only one insurance carrier would even agree to offer the college any terms to provide coverage out of requests for quotes sent to 50 or so various carriers.

37.     Returning to June 2020 where the relevance of the April 2020 EEOC charges links to Plaintiff's conspiracy claims based on personal animus for her instigated by Defendants Wasinger, Douglass and Ruda: Plaintiff is aware that president Ruda sent a college-wide email previewing in the email essentially the same intimidating and deterring comments Wasinger would proffer during the June 9 meeting and reaffirm at the June 25 meeting.

38.     This Ruda email evidences the pre-planned nature of the Defendant Trustees' actual public statements at the meetings on the 9th and the 25th of June.

39.     These retaliatory and intimidating statements were not isolated, unplanned statements put forth into the Garden City community, but part of a conspiracy to harm Plaintiff, take out revenge against her and others, and undermine and obstruct justice using the bully pulpit of the college president's office and the trustees' public meetings.

40.     The clear objects of their blame and shame statements are to deter by intimidation or threat witnesses from associating with Plaintiff and others, to deter individuals from providing testimony as witnesses because to do so would assist in harming the financial interests of the College, which is a bad act.

41.     Defendant Ruda was motivated by animus linked to the April EEOC charges, which were brought up in the public comment section of the June 9, 2020, board meeting even before Wasinger and Douglass engaged in their intimidating colloquy with Defendant Ruda who is seen in the background on video of the meeting lending his agreement thereto.

42.     All three Defendants also conspired to violate 42 U.S.C. § 1985(2)'s third and/or fourth clauses by the same behaviors, intending to impede, hinder, obstruct or defeat in any

manner the due course of justice in Kansas with the intent to deny Plaintiff Equal Protection of the laws or injure her, her reputation, or her property interests for lawfully enforcing or attempting to enforce Title IX and the rights of women students to Equal Protection of the laws.

43.     Plaintiff is identified by Defendants as a member of a class of persons who advocate for women's civil rights, who have instituted lawsuits and/or her EEOC charges to enforce civil rights and they as an identifiable class have been attempting to enforce these Equal Protection rights at GCCC for two years or more.

44.     Plaintiff alleges Defendants Wasinger, Douglass, Ruda and GCCC, through the individuals' acts, wanted to exact revenge against all civil rights plaintiffs or witnesses, including Plaintiff, and/or create a smokescreen with a publicity campaign in order to deflect responsibility of Defendants for the college's insurance predicament.

45.     The close proximity between knowledge of Plaintiff's EEOC charges of April 8 and Defendants' conspiratorial comments on June 9 and 25, 2020 significantly elevate to greater than a mere inference that Plaintiff's cause and effect evidence of a preplanned conspiracy is exhibited in the June 2020 assertions and is probative of Defendants' motives, prior agreement, intent to conspire and intent to injure Plaintiff.

46.     The individual GCCC Defendants each identify Plaintiff as a member of a specific, protected class of individuals, men and women who support enforcement of Title IX and women's civil rights, while Defendants Wasinger, Douglass and Ruda, perhaps others, in June 2020 attempted to publicly virtue signal in board of trustee meetings and lay claim to the false narrative that both GCCC and those three Defendants are "victims" of supposedly improperly asserted civil rights claims over the two prior years by Plaintiff and others.  Plaintiff asserts all Defendants are, in fact, the cause of any increased insurance premiums, economic

damage to the college's offerings by virtue of their own improper actions, not Plaintiff's.

47.     They singled her out from such other supporters.  Specifically, the Defendants were aware of an identifiable group of individuals, including but not limited to Toni Douglass, Mark Douglass, Aaron Kucharik, Eleanor Everett, Elizabeth Everett, Shaney Tiumalu, as well as identifiable community members, faculty and staff who signed two separate petitions in the summer of 2018 opposing the Defendant trustees' inaction regarding women's rights issues on the GCCC campus and called for action by the Defendant trustees to ameliorate their own harm and the harms that then college president, Herbert Swender, was attributed to be causing the college associated with civil rights violations, among other matters.

48.     Plaintiff was singled out for retaliation by these Defendants in May of 2019 and June 2020 because it was in large measure through her repeated efforts, both publicly and privately, to force transparency that the Defendants have been called to account by community members for years of college leaderships' failures to properly handle various alleged civil rights violations dating back to 2014, because an early Title IX incident involved her daughter.

49.     Plaintiff was caused such deprivation and injury as to lose her employment, be identified in the community as someone who intended, wrongfully, to harm the college, and by Defendants actions to have her reputation damaged, as well as to suffer from ongoing whisper campaigns that infer she is a "bad" person or essentially a pariah on the community.

50.     Plaintiff possessed rights under 42 U.S.C. § 1985(2) that she alleges were violated by trustee Defendants Wasinger and Douglass, and Defendant Ruda, as well as perhaps other college-authorized or supported state actors, when these Defendants, intending to benefit Defendant GCCC and themselves, on June 9 and June 25, 2020, specifically used their trustee and presidential statuses to act in concert with one another, conspiring together, and intending to

hinder justice and to harm Plaintiff's civil rights when Defendant Ruda participated both before and afterward in preparing documents or issuing public relations pieces that would and did become the basis for public comments that Defendant trustees Wasinger and Douglass, openly and publicly sought to deter, intimidate, threaten and/or retaliate against Plaintiff, among others the Defendants similarly-identified, as *civil rights parties with actions against GCCC participating in federal court, having provided the college with a prior notice of federal and state claims,* or as a *witness* in both an EEOC pending matter (that would be expected to ripen into a federal case) and affecting other federal civil rights actions involving GCCC pending in this district court.

51.     Their acts were done knowingly and intentionally to carry out a conspiracy through execution of a predetermined and therefore "agreed upon" policy of blame and shame against civil rights advocates in a purposeful effort to obstruct the federal and state enforcement processes of the justice system and deny Plaintiff the Equal Protection of the law to testify truthfully as a witness for herself and others.

52.     Defendant Ruda sent a memo dated June 8, 2020, to all trustees ahead of the June 9, 2020, board of trustees' meeting the language and gist of which closely mirrors the eventual unlawful comments actually made by Defendant trustees Wasinger and Douglass during two June meetings castigating civil rights advocates, by inference Plaintiff, as "bad" people and pariahs in the community for causing .  The memo supports Plaintiff's and others' allegations that Defendants Wasinger and Douglass purposely feigned surprise for effect and also supports the assertion that Defendants Wasinger, Douglass and Ruda pre-planned and reached an agreement.

**A Culture of Sexual Harassment in Cheer and Athletic Programs Ignored by Leadership**

53.     The legacy of GCCC's failure to properly handle Title IX complaints in athletic and other programs is well-publicized and partially reported in a 2019 report to trustees by retained investigator, Greg Goheen.  His questionable findings are referred to herein as the "Goheen Report."

54.     As an institution or on behalf of the institution, Defendants have adopted and enforced long term and pervasive unlawful policies, customs and practices having the effect of law or binding rules within the definition of actionable *Monell* "municipal" policies, which were used and directed against civil rights advocates such as Plaintiff by Defendants amounting to condoning unlawful Title IX violations and First/Fourteenth Amendments retaliation.

55.     Defendants, under the auspices of GCCC's adopted, sanctioned and/or ratified improper policies, took unlawful actions against her and others she is identified to have advocated for or with regarding women's rights on GCCC's campus and events dating back to 2014.

56.     Defendants knew and/or should have known by virtue of their state actor positions that at all relevant time periods Plaintiff was engaged in constitutionally protected speech, petitioning and associational conduct, when she both privately and publicly communicated her opposition to what Plaintiff identifies as Defendants' wrongful behaviors, which include but are not limited to violating Title IX and civil rights of women at GCCC and those who supported them.

57.     Dr. Wasinger and the four named trustee Defendants' vote and approval (excepting trustee Leonard Hitz) in January 2019 of the Goheen Report, intended to report on a May 8, 2018, Faculty Senate Report to the Board, evidences the college's ongoing institutional deliberate indifference toward civil rights advocates including Plaintiff.

58.     This same board vote also separately exemplifies another instance of ongoing Title IX based retaliatory action against Plaintiff in January 2019 by the publication and release of Goheen's findings the Board knew or should have known were:

      A.     misstatements of facts, as reported (per se)

      B.     misstatements of facts by omission (per quod) of material necessary to make the Report accurate and not misleading or defamatory

      C.     fraudulent findings/conclusions that became adopted Board actions/policies caused by intentional omission of Dr. Wasinger's prior knowledge of cheer coach Brice Knapp's sexual harassment claims history coupled with Dr. Wasinger's state created danger, failure to adequately warn, breach of fiduciary duties, failure to supervise, suppression of material evidence trustees needed to know to properly act on Title IX concerns or adoption of known, inadequate remedies to Title IX gender based policies associated with a student named Elizabeth Everett through Dr. Wasinger's indifference or improper behaviors.

59.     Trustees and now former president Herbert Swender were presumed to know the College's history of having been cited in 2007 by federal authorities for Title IX inadequacies involving a female athlete under similar circumstances, which occurred under a prior president's tenure.  Two of the five named Trustees, Douglass and Worf, were college trustees at the time of the Agreement; however, the Agreement's existence was not well known in 2018, including among some faculty and staff employed in or around 2007.

60.     By April 10, 2018, at the board of trustees' meeting, public knowledge of the sexual harassment problems in the cheer program was widespread throughout the Garden City

community, including issues associated with the cheer coach and Plaintiff's daughter dating back to 2014-15.

61.     The deliberate indifference of top administrators became apparent in board meetings to follow including through the June 2020 meetings referenced above and in factual situations addressed herein in other contexts.

62.     By late 2017 and early 2018, however, Toni Douglass, another civil rights advocate for women, became aware of student-centered issues involving sexual harassment, past and present, regarding inappropriate behavior of the male cheer coach, Brice Knapp.  As the facts unfolded instances of questionable behavior dating back to 2014 were brought to the attention of administrators and trustees by Toni Douglass, including the coach having suggested, encouraged and then taken a picture of 5 women cheer squad members who posed for him with bare bottoms, "mooning", against his hotel window during an out of town cheer competition.

63.     Plaintiff's assertions and facts stated herein are, inherently, only a highly condensed glimpse of the more fulsome evidence of retaliation and civil rights violations known to Plaintiff and/or believed to exist in support of her claims.  Even though this Complaint is a summary, Plaintiff contends the improper behaviors of Defendants are conscience-shocking, sadly true, and evidence-based validation for the theory that the cover-up is always worse than the initial wrong associated with it.  The trustees have gone to great lengths to try to distance themselves from their fiduciary duties but they can't do so successfully because they were on notice that Defendant Swender was violating Plaintiff's rights and yet they stood with Swender, not with the people subject to Swender's authoritarian rule they were elected to protect.

### COUNT I: TITLE IX RETALIATION
**Plaintiff v. Defendant Garden City Community College**

64.     Plaintiff incorporates by reference the facts and allegations set forth in all preceding paragraphs and in all Counts as if fully set forth here.

65.     The Supreme Court recognized a cause of action for Title IX retaliation in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005).

66.     In the Tenth Circuit, the courts apply the Title VII framework to Title IX retaliation claims. *Gossett v. Okla. ex rel. Bd. Of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001).

67.     Defendant GCCC is a recipient of federal funds.

68.     Plaintiff engaged in protected activity when she reported the harassment of her daughter, when she filed her EEOC charges in April 2020 detailing years of deliberate indifference and active harassment of advocates for women's Title IX rights on GCCC's campus.

69.     She herself was harassed by former cheer coach Bryce Knapp when he interfered with her dance team's performances turning down their music or taking control over music and then not turning it on when cued to do so; after she and her daughter complained of Title IX harassment against her daughter in 2014-15; and when she reaffirmed the harassment after her daughter in 2017 brought additional evidence of coach Knapp's bad acts to administrators when her daughter was able to locate and then produce a copy of a formerly deleted photograph of the five cheer athletes, referenced above.

70.     The number and types of harassing acts by GCCC's employees and trustees are not able to be recited herein because they would overwhelm the purposes of a Complaint but suffice it to say Plaintiff alleges the extensive factual matters set forth herein relevant to Title IX harassment as required to state a claim for Title IX retaliation in May 2019 through 2020 which

is plausible, not merely conceivable, on its face against the named Defendants including based on facts provided from her EEOC charges.

71.     Plaintiff's allegations are Defendants' unlawful animus detailed herein reached a final, actionable crescendo when on May 20, 2019, Defendant Ruda announced her termination based on Title IX and EEOC pretextual reasons, not based on performance or other lawful reasons tied to any reasonable basis such as economic savings, which Plaintiff asserts have not panned out in the long run associated with her termination.

72.     Plaintiff suffered a materially adverse action when she:

A.     Was terminated from her employment for retaliatory reasons in July 2019 and denied access to college opportunities funded by federal monies.

B.     Was intimidated and deterred in June 2020 to be a witness and/or a claimant by public statements of Defendants Wasinger, Douglass, and Ruda alleged above.

C.     Was subjected to shunning by her peers who were encouraged to do so by Defendants and other college state actors referenced herein.

D.     Was subjected to a reputation damaging whisper campaign beginning in 2018 and continuing through today by Defendants herein.

E.     Missed work due to anxiety, depression and stress caused by the colleges and Defendants' conduct.

F.     Was subjected to a conspiracy by college officials including all Defendants herein when they knew about the bad acts of employees under their control for years and yet did nothing to stop or deter those acts.

G.     When after she asked Defendant Trustee Martinez to intercede, he did nothing except share her concerns with other Defendants who seized the opportunity to double down on harassing and intimidating behaviors including by coach Knapp, former president Swender, Ruda, Wasinger, Douglass, Worf, and Crist in some, additional ways she believes can only be rooted out through discovery.

H.     Was held up to public contempt and ridicule by Defendants for having reported Title IX harassment, including when they also encouraged others to do the same.

I.     Was denied unknown offerings by community individuals because of ongoing intimidation carried out in June 2020, which were fostered by Defendants' hostile attitudes.

J.     Will be subjected to future harms based on the notoriety of the published reports associated with the cheer scandal at GCCC and tied to her.

K.     Suffered from extreme emotional distress such that it affected her enjoyment of life, causing her to lose weight, withdraw from social interactions, and lose income because of her distress.

73.     There is a causal connection between the protected activity and the materially adverse actions, as evinced by the following facts:

A.     The same college administrators and trustees who received the protected reports engaged in activity aimed at frustrating the investigation into those reports, they sought to intimidate Plaintiff with their June 2020 comments, damage her reputation with such comments, encouraged, authorized, organized and/or endorsed the termination of her employment and sought to exclude her from participation in GCCC's offerings.

B.     The retaliatory acts came immediately after the protected activities.

C.     The retaliatory acts occurred as part of a clear chain of cause and effect stemming from the protected activity.

D.     The retaliatory acts were in some cases designed to thwart the efficacy of Plaintiff's protected activities and deter her from engaging in protected activities thereafter.

E.     The same college administrators who had actual knowledge of Plaintiff's protected activities deliberately permitted administrators and/or other trustees to continue creating a hostile Title IX environment.

F.     The college administration and Defendants herein utilized the bully pulpit of state actors to carry out from 2018 through 2020 unlawful intimidation tactics against other advocates for women's rights on the GCCC campus in well-publicized, concerted, organized efforts to attempt to crush critics of the leadership, including but not limited to the various acts evidenced in the three other litigation matters pending against GCCC in this district court, which the court is encouraged to take judicial notice of because all of these acts of deliberate indifference multiply exponentially the effect of the initial college intimidation.

G.     Furthermore, when Defendants Wasinger, Douglass and Ruda engaged in the retaliatory conduct set forth above, where the retaliatory conduct originated with the college's top leadership, the Defendant College has failed under Title IX standards to properly supervise its leaders, to properly exert substantial control over these state actors, and failed to stop the retaliation and harassment.  The Defendant college's failure to control actually instead served to ignite the retaliation.  Therefore, Plaintiff alleges the

link between the cause and effect are direct and clear to serve as the basis for liability against the college.

H.      The college trustees' flagrant disregard for protecting Plaintiff from harassment and conspiracy of its own elected board members, the failure to raise issues of disqualification of Wasinger and Douglass from taking action on issues related to Plaintiff's and other's claims against the college when the participation of Wasinger and Douglass, who are inherently biased against Plaintiff, constitutes separate materially adverse acts, past and present, against Plaintiff's Title IX and constitutional interests.

I.      These three Defendants' unchecked harassment that was publicly exhibited in June 2020 multiplied exponentially the likelihood Plaintiff will suffer additional instances of retaliation.  The trustees' conduct evinces a direct causal link between the college leaderships' intolerance for Title IX enforcement and actual acts of hostility toward women including retaliation as to be extreme and outrageous behavior.

74.     The college's affirmative actions and inactions made Plaintiff more susceptible to Title IX harassment and retaliation after Plaintiff's reports, including the EEOC charges.

75.     The college's conduct was in no way reasonably designed to help Plaintiff or to stop the hostile educational environment but rather created the incendiary spark to encourage more retaliation, which their conduct has done.

76.     Defendants' conduct was wanton and in reckless disregard for the rights and safety of Plaintiff.

77.     Defendant college exhibited deliberate indifference to Plaintiff's rights and wellbeing when it permitted Ruda to terminate her employment, when the trustees failed to properly perform their statutory and regulatory functions under Kansas law that require trustees

to exercise the non-delegable duty to cease programs such as the dance and cheer programs or to combine them into one spirit squad program, when they ratified without question Ruda's improper termination of Plaintiff for unlawful Title IX reasons knowing his acts were nondelegable and their responsibility, by failing to conduct a timely, proper and reasonable Title IX investigation, by the college's cover up of prior complaints involving coach Knapp, by the subsequent intimidation and continued retaliation against Plaintiff by the college, president Ruda, trustees Wasinger, Martinez, Douglass, Worf, and Crist and other unknown allies, and other conduct as alleged herein.

78.     As a direct result of Defendants' conduct, Plaintiff suffered lost Title IX opportunities, emotional distress, anxiety and stress, lost earnings capacity and loss of economic opportunities, reputational damage, medical bills, and additional costs and damages, including attorneys fees.

79.     WHEREFORE, Plaintiff prays for an award of actual and consequential damages against Defendant in an amount in excess of $75,000, under Title IX, fully compensating Plaintiff for the damages suffered as a direct and proximate result of Defendant's unjustified actions, an award of interest and costs of suit, including reasonable attorney fees, punitive damages as justified, and such other and further relief as the Court finds just and proper.

**COUNT II: DEPRIVATION OF RIGHTS UNDER THE
UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983
FIRST AND FOURTEENTH AMENDMENT VIOLATIONS**
**Plaintiff v. GCCC and Each Named Individual Defendant in their individual capacities**

80.     Plaintiff incorporates by reference the facts and allegations set forth in all Counts as if fully set forth here.

81.     Plaintiff alleges that at all times relevant hereto, Defendants Garden City Community College, Jeff Crist, Merilyn Douglass, Steve Martinez, Blake Wasinger, Teri Worf,

23

and Ryan Ruda were acting under color of state law and their actions were made possible by

virtue of state law.

82.     Plaintiff alleges each Defendant deprived her and caused her to suffer the loss of

federal constitutional rights guaranteed to her by the First and Fourteenth Amendments when

each Defendant committed the following acts and violations, including acting in accordance with

Defendant GCCC's custom, policy and/or practice in violating Plaintiff's constitutional rights as

set forth below:

      A.     Their acts terminating her employment in retaliation for and to punish her

for exercising her First and Fourteenth Amendment rights to comment on matters of

public concern criticizing their improper and inadequate handling of Title IX violations

thus chilling her free speech rights intending to enforce an unlawful prior restraint and

denying her right to association.

      B.     The trustee defendants failed to intercede on behalf of Plaintiff when their

fiduciary duties obliged them to do so under their non-delegable duties under state law,

knowing their employee/s had acted unlawfully in terminating her employment,

conspiring to silence Plaintiff and deter her testimony for other plaintiffs, and because

they were vested with state actor responsibilities to protect Plaintiff from unjustified and

unconstitutional infringement of Plaintiff's First and Fourteenth Amendment association,

petition and free speech rights all in violation of 42 U.S.C. § 1983 for her having spoken

to the displeasure of Defendants (an unlawful content based retaliation).

      C.     They denied Plaintiff her First and Fourteenth Amendment petition rights

seeking relief from Defendant GCCC when she petitioned them 1. to fix board custom,

policies, and/or practices associated with retaliation based on the content of one's speech;

2. to fix board custom, policies and/or practices making permanent reforms to assure the college alleviates gender based discriminatory practices, as written and as applied; and 3. to fix board customs, policies and/or practices to assure no future administration takes any retaliation against individuals who speak in favor of Title IX enforcement.

      D.     They violated Plaintiff's First and Fourteenth Amendment rights by retaliating against her using the bully pulpit of board of trustee meetings and engaging in a follow up public relations campaign led by Defendant Ruda in June 2020 to punish her for having spoken previously about matters of public concern associated with Title IX violations and mishandling of sex discrimination complaints including on behalf of her daughter.  The acts set forth herein establish a pattern of retaliatory abuse, malicious retribution, misuse of otherwise lawful means of process, and/or arbitrary abuse of state authority for malicious, wrongful, personal, or ignoble aims focused against Plaintiff and others similarly situated.

83.    As to each lettered assertion above, these bad acts by the Defendants were done without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts entitling Plaintiff to punitive damages.

84.    The Defendants acts caused her to suffer an injury, including job loss and reputational harms, that likely would and has chilled Plaintiff from continuing to engage in such speech and witnessing activities based on the standard of a person of ordinary firmness.

85.    The Defendants adverse actions were substantially motivated as a response to Plaintiff's exercise of her constitutionally protected rights to free speech, petition and association.  They did not like her criticisms and calls for reform.

86.     The Defendants knew she was engaged in exercising her free speech rights at all times relevant hereto.

87.     The Defendants acts were taken in retaliation for the exercise of her constitutionally protected right to free speech making it actionable under § 1983 even if the act, when taken for a different reason, would have been proper.

88.     And the Defendants did cause injury and damage to Plaintiff in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourteenth Amendments.

89.     As a result of the foregoing, Plaintiff was deprived of her free speech rights as well as the right to be free from retaliation for exercising her constitutional rights as specified, she suffered specific and serious physical restraint and injury, psychological injury and emotional distress, great humiliation, and was otherwise damaged and injured.

90.     WHEREFORE, Plaintiff prays for an award of actual damages against Defendants in an amount in excess of $75,000, under the Constitution and 42 U.S.C. § 1983, fully compensating Plaintiff for the damages suffered as a direct and proximate result of Defendants' retaliatory and unjustified actions, an award of interest and costs of suit, including reasonable attorney fees pursuant to 42 U.S.C. § 1988, punitive damages as justified, and such other and further relief as the Court finds just and proper.

### COUNT III: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS UNDER 42 U.S.C. § 1985(2)
Plaintiff v. Defendants Wasinger, Douglass and Ruda in individual capacities and Defendant GCCC

91.     Plaintiff incorporates by reference the facts and allegations set forth in all preceding paragraphs and Counts as if fully set forth here.

92.     Plaintiff has been retaliated against by Defendants Wasinger, Douglass and Ruda, acting in their individual capacities, and by Defendant GCCC, acting through its final decision-makers, ratifying as an official policy their actions, and/or based on the failure to adequately train or supervise their employee, Defendant Ruda, as set forth herein for the purposes of impeding, hindering, obstructing or defeating the due course of justice given the examples detailed throughout each Count and the facts set forth throughout this Complaint.

93.     Plaintiff has been harmed by the undermining of justice, loss of her Free Speech, Petition and Association rights as well as other civil rights violations detailed throughout each Count and the facts asserted throughout this Complaint.

94.     Plaintiff has been damaged in her standing in the community because of these intimidating and threatening statements of the Defendants in June 2020.  These three Defendants specifically had a meeting of the minds to engage in unlawful conduct to intimidate and deter witnesses' truthful testimony and thereby carry out a civil rights conspiracy violation under 42 U.S.C. § 1985(2) against Plaintiff, among others.  Defendant GCCC is responsible under *Monell* for having promulgated an official policy condoning their behaviors, for these acts by final decision-makers with policy making authority, for ratification of their unlawful acts, the failure to adequately train and/or supervise employees and these trustees when they knew or should have known better based on their state actor status.

95.     These three Defendants, as final decision makers and working as a team with one common intent, goal and/or primary agenda to shame, blame, intimidate, threaten and deter civil rights plaintiffs and witnesses, including Plaintiff, engaged in wrongful, actionable conduct intending to intimidate and threaten Plaintiff as both a putative federal court plaintiff and as a known witness for other civil rights plaintiffs with active federal litigation.

96.     Plaintiff alleges Defendants Wasinger, Douglass and Ruda violated two aspects of 42 U.S.C. § 1985(2) and conspired to obstruct the due course of justice, state and federal.

97.     On two occasions in June 2020, June 9 (incorrectly identified as June 8 on the GCCC trustees web page) and June 25, at Board of Trustees meetings Defendants Wasinger and Douglass in exchanges that appear preplanned or with prepared notes engaged in what Plaintiff alleges is a conspiracy to deter by intimidation and threat her as a witness in this federal court from attending or testifying freely, fully and truthfully herein and as a putative Plaintiff in this Complaint.  They conspired along with Defendant Ruda to violate 42 U.S.C. § 1985(2)'s first clause and harmed Plaintiff thereby.

98.     They accomplished their threats and intimidation by deriding as bad people, essentially pariahs in the Garden City community, anyone who brought civil rights claims against the College in the course of the last two years associated with the issues relevant herein. They inferred that anyone who brings civil rights claims or testifies in support of such claims were damaging the College, the students and destroying faculty and staff jobs because those were the consequences of the insurance rate hikes wrought upon the College due directly to the civil rights claims.

99.     These statements are also retaliatory against Plaintiff under Title IX and under 42 U.S.C. § 1983.

100.    The statements castigating civil rights Plaintiffs for bringing claims that have allegedly damaged the College and foisted on the College severe cutbacks affecting student services and thereby intimidating witnesses including Plaintiff from associating with or testifying for herself or on behalf of other plaintiffs were made by these Defendants knowing they would be interpreted in this fashion.

101.   These statements have been repeated by the college president, Defendant Ruda, to media outlets including KSN-TV, among others, in retaliation for Plaintiff having brought her EEOC charges, noticing up a state law Notice of Claim in 2018, for asserting civil rights claims and with the intent to damage Plaintiff while also intimidating witnesses not to testify on her behalf.

102.   Plaintiff is aware that Defendant Ruda sent a college-wide email stating essentially the same intimidating assertions the day before the June 9 meeting, evidencing the pre-planned nature of the Defendant Trustees' actual public statements at the meetings on the 9th and the 25th of June.  These retaliatory and intimidating statements were not isolated, unplanned statements but part of a conspiracy to harm Plaintiff as a witness and a putative plaintiff, and undermine and obstruct justice using the bully pulpit of the college president's office and the trustees' public meetings.

103.   The clear objects of their blame and shame statements are to deter by intimidation or threat witnesses from associating with Plaintiff and Plaintiff providing testimony as witness because to do so would assist in harming the financial interests of the College, which is a bad act.

104.   They also conspired to violate 42 U.S.C. § 1985(2)'s third and/or fourth clauses by the same behaviors, intending to impede, hinder, obstruct or defeat in any manner the due course of justice in Kansas with the intent to deny Plaintiff Equal Protection of the laws or injure her or her property interests for lawfully enforcing or attempting to enforce Title IX and the rights of women students to Equal Protection of the laws.

105.   Plaintiff is identified by Defendants as a member of a class of persons who advocate for women's civil rights, who have instituted lawsuits to enforce their civil rights and have been attempting to enforce these Equal Protection rights at GCCC for two years or more.

106.     Plaintiff has been retaliated against by Defendants as set forth herein for the purposes of impeding, hindering, obstructing or defeating the due course of justice given the examples detailed herein.

107.     Plaintiff has been harmed by the undermining of justice, loss of her Free Speech, Petition and Association rights as well as other civil rights violations detailed herein.

108.     Plaintiff has been damaged in her standing in the community because of these intimidating and threatening statements of the Defendants.

109.     Defendants acted willfully, wantonly, punitively and vengefully to such an extent that punitive damages are supportable, and Plaintiff claims she is entitled to such relief.

110.     WHEREFORE, Plaintiff prays for an award of actual and consequential damages against Defendants in an amount in excess of $75,000, under the Constitution and 42 U.S.C. § 1985, fully compensating Plaintiff for the damages suffered as a direct and proximate result of Defendants' unjustified actions, an award of interest and costs of suit, including reasonable attorney fees pursuant to 42 U.S.C. § 1988, punitive damages as justified, and such other and further relief as the Court finds just and proper.

**COUNT IV: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
UNDER 42 U.S.C. § 1983
Plaintiff v. All Defendants, including in their individual capacities
against the named individuals**

111.     Plaintiff incorporates by reference the facts and allegations set forth in all preceding paragraphs and Counts as if fully set forth here.

112.     Plaintiff at all times relevant hereto sought to and did exercise her free speech, association and petition rights under the First and Fourteenth Amendments on matters of public concern, not merely private concern, advocating for systemic changes at GCCC to benefit all women and improve their treatment to align with Title IX requirements.

113.     Because she is a woman and spoke up at GCCC for women's rights, at all relevant times hereto, she became well known for supporting, speaking on behalf of and caring about the respectful treatment of women on the college's campus, its programs and in their community.

114.     All Defendants and perhaps unknown others associated with Defendants knew or thought Plaintiff was a member of a class of one or more women who are outspoken about GCCC and about the college's leadership, employees, agents or allies treatment of women on its campus, in its programs or associated with its events.  These are not purely private concerns, but rather are matters of public concern.

115.     All Defendants and perhaps unknown others associated with Defendants knew or thought Plaintiff supports women on the GCCC campus, in its programs and in their community as a constituent member of a class of one or more persons based on gender and they knew this because of her outspoken statements in support of her gender at all times relevant hereto.

116.     All Defendants and perhaps unknown others associated with Defendants may also have identified her as a member of a more narrowly tailored class of one or more persons who publicly objected to the college's inadequate enforcement of women's rights, in general, and Title IX gender rights, specifically, and/or as a person who objected to retaliation by the college for anyone having exercised her/his First and Fourteenth Amendment rights to support, in words or deeds, women's rights on the GCCC campus and/or as a person whose class for purposes of this Count is known for expressing speech supportive of women coupled with content of such speech being critical at times of the college, its administrators, staff, faculty and/or specifically the named trustee Defendants and under *Monell* under customs, practices and policies adopted by the college and/or its final decision-makers with respect to women's rights.

117.    Plaintiff was and is identified by all Defendants and perhaps unknown others associated with Defendants, as a class of one or more persons who publicly supports and advocates for better enforcement of Title IX rights at GCCC, for better treatment of women and their rights at GCCC, and speaks critically at times of the college, its administrators, staff, faculty and/or specifically the named trustee Defendants on this subject.

118.    All Defendants and perhaps unknown others associated with Defendants, and the college speaking through its agents, have overtly expressed their animus against Plaintiff at public meetings, in private conversations, through written instruments, texts, emails, and through visible and obvious body language Defendants exhibit at times when they interact with Plaintiff. The evidence Plaintiff will elicit will show this assertion is true, or more likely true than not, by meeting the appropriate evidentiary standard that applies for each relevant person although not all examples are capable of being detailed here.

119.    Defendants Wasinger and Douglass, in public meetings referenced herein, expressly hold Plaintiff and her as a class representative in contempt, they have a personal animus and gender related discriminatory attitude against her and her kind as a class or classes as identified herein.  They also do not like Plaintiff for her stand on women's rights and for her raising Title IX complaints.

120.    Defendant Ruda expressly holds Plaintiff in contempt, has a personal animus and gender related discriminatory attitude against her because he came to take it personally that Plaintiff through her EEOC charges involved him in her criticisms to trustees, who are his supervisors, of his inadequate handling of or enforcement of Title IX rights violations at the college and because he did not become an agent of change after the Goheen Report [a trustee

instituted investigator's report into issues raised by Faculty Senate in their May 2018 report to the trustees] was issued and adopted.

121.    These Defendants and likely others engaged in a conspiracy against Plaintiff.

122.    And the aim of the conspiracy agreement, motivated by the requisite ill will, was an intent to deprive Plaintiff of her civil rights because she spoke critically of Defendants' handling of Title IX complaints.

123.    The actionable offense, the aim of the conspiracy, against Plaintiff was to interfere with her employment and thereby cease her involvement with anyone on the campus or at campus events--inherent with such an interference is a violation of Plaintiff's rights to freedom of association on or about a state facility, the campus or events of GCCC.

124.    The mechanism that was misused, as applied, was a plan to terminate both the dance and cheer programs, eliminate Plaintiff's job without trustee approval of the plan, eliminate the cheer coach's job and for pretextual, not reasonable grounds, to substitute a spirit squad program and bring in the wife of the head football coach in one fell swoop.  The facts surrounding this plan carried out in derogation of state statutes and regulations that require the trustees to exercise a non-delegable duty when it comes to such program and job terminations makes this curtailment the misuse of state authority by state actors and a violation of her First/Fourteenth Amendment constitutional rights to freedom of speech without retaliation and freedom of association and petitioning because the reasons underlying the conspiracy are to silence and punish Plaintiff for having spoken up in the first instance and intending to deter her in the future from speaking against Defendants about Title IX or other women's rights issues on the GCCC campus.

125.    Mechanisms that were misused include but are not limited to the improper use and diversion of college administrators' time and attention to their normal, proper duties and the unlawful diversion of college personnel and public funds to carry out the conspiracy on state time.

126.    Plaintiff asserts the aim of the conspiracy was accomplished when she was terminated from her employment in July 2019, and she alleges the conspiracy caused her injuries and the deprivation of her civil rights to freedom of association and was a chilling prior restraint on her speech.  It was intended to harm her reputation, hurt her emotionally, control her association rights, and hurt her economically.

127.    These violations against Plaintiff were carried out by the acts of the named Defendant trustees and Defendant Ruda and became the acts of the college thereby.  Defendant trustees knew the intent of the plan was to violate Plaintiff's rights and yet they failed to act to rescind the termination and rescind the dissolution of the program in favor of a new program with an aim to hire the football coach's wife.

128.    The trustees would have had the authority to order the reversal of the plan because by state law they are statutorily delegated all rights necessary to oversee the college and the non-delegable right to hire and fire appointees of the president.

129.    Trustee Douglass has exhibited behaviors indicating she bears ill will toward Plaintiff as evidenced by the post termination but preplanned colloquy at the June 9, 2020, meeting.

130.    Other Defendant Trustees are alleged to bear ill will against Plaintiff as well because she is viewed as a prime participant in criticisms of the prior administration.

131.    Plaintiff has been the recipient of behaviors similar to those of Trustee Douglass detailed above from each trustee at different times.  Therefore, upon information and belief, Plaintiff asserts these trustees may have been part of or contributed to the conspiracy averred in this Count. Additional discovery is needed to augment this element; however, the evidence known to Plaintiff to date leads to her assertion that it is more likely true than not that each one harbors a personal animus against her on the basis of her class.

132.    Through the conspiracy carried out by the individual named Defendants and through the official policies of Defendant GCCC in furtherance of the conspiracy, Plaintiff was deprived of her right to equal protection of the law, suffered specific and serious injury, psychological injury and emotional distress, incurred medical bills, suffered great humiliation, and was otherwise economically damaged as a consequence of their acts and injured thereby.

133.    Plaintiff was further conspired against by Defendants Wasinger and Douglass when they retaliated against her by intimidating through bullying statements on June 9 and June 25, 2020, that her and others' civil rights claims were damaging the college and attempting to shame any civil rights Plaintiffs or their witnesses by holding them up to contempt, ridicule and approbation.  Their statements were intended to intimidate Plaintiff and other witnesses from the GCCC campus and from the Garden City community from testifying in any civil rights claims by this Plaintiff or suffer public shaming and blame for harming the college.

134.    Their actions were wanton, malicious, punitive and vengeful to such an extent that punitive damages are supportable, and Plaintiff claims she is entitled to such relief.

135.    WHEREFORE, Plaintiff prays for an award of her actual and consequential damages against Defendants in an amount in excess of $75,000, under the Constitution and 42 U.S.C. § 1983, fully compensating Plaintiff for the damages she suffered as a direct and

proximate result of Defendants' unjustified actions, an award of interest and costs of suit, including reasonable attorney fees pursuant to 42 U.S.C. § 1988, punitive damages as justified, and such other and further relief as the Court finds just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

### DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the place of trial in Kansas City, Kansas.

Respectfully submitted,

/s/ Jean Lamfers
Jean Lamfers, KS #12707
Lamfers & Associates, L.C.
1600 Genessee Street, Suite 956
Kansas City, Missouri 64102
Tel.: (913) 962-8200
jl@lamferslaw.com

ATTORNEY FOR PLAINTIFFS